UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL L. BROOKS,

    Petitioner,

v.                                                                            CASE NO. 6:07-cv-503-Orl-31KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner filed an amended petition for writ of habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 12). Upon consideration of the amended petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 15). Petitioner filed a reply to the response (Doc. No. 18).

Petitioner alleges seven claims for relief in his habeas petition: (1) the state trial court erred by denying his motion for judgment of acquittal, (2) the state trial court erred by admitting hearsay testimony, (3) the prosecutor violated his Fifth, Sixth, and Fourteenth Amendment rights, (4) the state trial court invaded the province of the jury and forced a quick verdict, (5) trial counsel rendered ineffective assistance by failing to interview and

subpoena alibi witnesses, (6) trial counsel rendered ineffective assistance by failing to object to perjured testimony, and (7) the habeas petition is timely pursuant to 28 U.S.C. 2244(d)(1) & (2).[1]  For the following reasons, the petition is denied.

I.  *Procedural History*

Petitioner was charged by information with aggravated battery with a deadly weapon or causing great bodily harm.  A jury trial was conducted, and Petitioner was found guilty as charged.  The trial court sentenced Petitioner to a fifteen-year term of imprisonment.  Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam* .

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  The state trial court denied the motion.  Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

II.  *Legal Standards*

A.  *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1]Claim seven is not actually a claim seeking habeas relief.  Respondents have not argued that instant action is untimely.  Accordingly, it is not necessary to address claim seven.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall

3

have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

  B.  *Standard for Ineffective Assistance of Counsel*

  The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

  As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

> discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III.    *Analysis*

### A.    *Claims One, Three and Four*

In claims one through four, Petitioner asserts three claims of trial court error and one claim of prosecutorial misconduct resulting in constitutional violations. Specifically, Petitioner asserts that the state trial court erred (1) by denying his motion for judgment of acquittal (claim one), (2) by admitting hearsay testimony (claim two), and (3) by invading the province of the jury and forcing a quick verdict (claim ). He further contends that the prosecutor made various statements during her closing argument that resulted in prosecutorial misconduct in violation of the Fifth, Sixth, and Fourteenth Amendments.

Respondents assert that these claims are procedurally barred from review by this Court. In support of their contention, Respondents maintain that claims one through three were raised on direct appeal in the state court solely as state law claims, and not as federal constitutional violations.

Pursuant to the AEDPA, federal courts are precluded, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means

of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (I) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass

6

upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). " 'Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (quoting *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998)) (determining that the petitioner exhausted certain claims on direct appeal even though he failed to indicate that the claims were to be reviewed under the Federal Constitution, because he provided sufficient information about the claims (including cites to Supreme Court cases) to notify the state courts that the issues were raised on both state and federal grounds.). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

With respect to claims one and three, Petitioner cited only to state cases on direct appeal, and all of his substantive arguments addressed Florida law. None of the cases to which Petitioner cited was decided on federal grounds and he did not indicate that he sought to raise federal claims. *Baldwin*, 541 U.S. at 32. Although Florida courts assess the sufficiency of the evidence under the standard applied in *Jackson v. Virginia*, 443 U.S. 307

(1979),[3] the basis of Petitioner's argument as to claim one was that the case was based solely on hearsay evidence. Nothing in claims one or three would have alerted the state court to the presence of a federal claim. Therefore, claims one and three were not exhausted and are procedurally barred.

In support of claim two on direct appeal, Petitioner cited *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). (App. F at 20.) Although *DiGuilio* is a Florida case, it involves consideration of the application of the harmless error standard enunciated in *Chapman v. California*, 386 U.S. 18 (1967). As such, the Court finds that Petitioner cited a case deciding a similar claim on federal grounds in the state court in support of claim two. The Court concludes, therefore, that claim two was exhausted and is not procedurally barred.

Additionally, Respondents contend that claim four was procedurally defaulted and not preserved for appellate review because Petitioner failed to object to the trial judge's actions that allegedly forced the jury render a quick verdict. The record indicates that no objections were made at trial to the trial judge's comments that purportedly invaded the province of the jury and forced a quick verdict. The state appellate court *per curiam* affirmed Petitioner's conviction and sentence.

---

[3]In *Jackson*, the Court concluded that when considering a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Even though the state appellate court was silent as to its reasons for affirming Petitioner's conviction and sentence, this Court will not assume that the court did not observe the applicable procedural bar. *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993). (holding that a federal court "may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of [the] case . . . In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Instead, the Court will assume that had the state court addressed claim four, it would have enforced the procedural bar. *See Kight v. Singletary*, 50 F.3d 1539, 1544 (11th Cir. 1995) (recognizing that pursuant to Florida law, "a claim not objected to at trial is not preserved for appeal and cannot be raised in a postconviction proceeding"). Accordingly, the Court must deny claims one, three, and four as procedurally barred unless Petitioner establishes one of the two exceptions to the procedural default bar.

First, a petitioner may overcome a procedural default by showing "both 'cause' for the default and actual 'prejudice' resulting from the default." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). The second exception, known as the "fundamental miscarriage of justice," only "occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id*. In the present case, Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the

9

exceptions to the procedural default bar. Therefore, claims one, three, and four are procedurally barred.

Alternatively, even if this Court were to consider the merits of claims one, three, and four, they would be deemed meritless. The record establishes that sufficient evidence was presented for the jury to find the essential elements of the crime beyond a reasonable doubt. Moreover, Petitioner has not demonstrated that the prosecutor's alleged misconduct was so pronounced and persistent that it permeated the trial and warranted dismissal. *See, e.g., United States v. Thomas*, 8 F.3d 1552, 1561 (11th Cir. 1993). Finally, the statements made by the trial judge to the jury did not indicate the judge's impression as to Petitioner's guilt or innocence nor did they explicitly or implicitly rush the jury to render a verdict. Accordingly, claims one, three and four are procedurally barred and otherwise without merit.

### B.   *Claim Two*

Petitioner asserts that the trial court erred by allowing the prosecution to call Janet Shirah ("Shirah") as a rebuttal witness because her testimony was hearsay. Specifically, Petitioner asserts that Shirah's affirmative response to the prosecutor's question whether Petitioner was standing over the victim and making her say that the stabbing was an accident was inadmissible hearsay that resulted in constitutional error.

As noted *supra*, this claim was raised on direct appeal, and the state appellate court affirmed *per curiam.*

Pursuant to *Fry v. Pliler*, 551 U.S. 112 (2007), assuming there is a constitutional error, "if the state court . . . did not recognize that there was error, federal habeas relief is still due to be denied if the constitutional error was harmless." *Hodges v. Attorney General, State of Fla.*, 506 F.3d 1337, 1343 (11th Cir. 2007) (citing *Fry*, 127 S. Ct. at 2328). Such an error will be deemed harmless unless it had a "substantial and injurious effect" on the jury's verdict. *Id.* (citing *Fry*, 127 S. Ct. at 2328); *see also Brecht v. Abrahamson*, 507 U.S. 619 (1993).

In the instant case, evidence was presented that Petitioner stabbed Calondra T. Tookes ("Tookes") in the back. The evidence included the testimony of a 911-operator and the audiotape of a 911-conversation, wherein Tookes told the operator that "Michael" stabbed her. (App. A at 34.) Additionally, Officer Rowland Ray testified that when he arrived at Tookes' home, she told him, "Michael Brooks stabbed me . . . [b]ecause I told him to get out of my house." *Id.* at 109. Officer Rowland stated that Tookes did not indicate that the stabbing was an accident, and she provided him with a description of Petitioner. *Id.* at 109-11. Officer Tim Hawxwell testified that he apprehended Petitioner near Tookes' home shortly after the 911-call was received and when he approached him, Petitioner said, "It's me, It's me." *Id.* at 46-53. Officer Hawxwell indicated that Petitioner was sweating as if he had been running when he arrested him. *Id.* at 53.

The jury also heard Petitioner testify that the stabbing was an accident that occurred when Tookes grabbed his arm to prevent him from leaving and then fell on the knife that was in Petitioner's hand. Additionally, letters written by Tookes were introduced into

11

evidence indicating that the stabbing was an accident, that Tookes and Petitioner kept knives in their bed, and that Tookes accidently backed into one of the knives.

The Court concludes that the state court's ruling on the admissibility of Shirah's testimony did not result in a constitutional error. Alternatively, even assuming that the state court's evidentiary ruling resulted in a constitutional error, the Court finds that the ruling did not have a substantial and injurious effect or influence on the jury's verdict. Evidence was presented demonstrating that Petitioner stabbed Tookes in the back, that Tookes did not indicate initially that the stabbing was an accident, and that Petitioner fled the scene of the offense. Petitioner's testimony that the stabbing was an accident was corroborated by Tookes' letters, however, their versions of the events were contradictory. The Court concludes that Petitioner has not demonstrated that the state court's determination was contrary to, or an unreasonable application of, federal law. Accordingly, claim two is denied pursuant to § 2254(d).

### C. *Claim Five*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to interview or subpoena alibi witnesses to testify.[4] Petitioner does not indicate the identity of these witnesses in his amended habeas petition. The Court assumes, however, that Petitioner is referring to counsel's failure to call Shauna Payne ("Payne") and Tookes as alleged in his Rule 3.850 motion.

---

[4]Although Petitioner calls these witnesses alibi witnesses, they are not in fact alibi witnesses.

Petitioner raised this claim in his Rule 3.850 motion. Applying *Strickland*, the state court denied relief. (App. J at 2-3.) With respect to Tookes, the state court reasoned that had she been called to testify that Petitioner did not pressure her to write letters indicating that the stabbing was an accident, Tookes would have been impeached by her statement to police that Petitioner stabbed her. (App. J at 3.) As to counsel's failure to call Payne, the state court determined that even assuming Payne could testify that Tookes told her the stabbing was an accident, the jury heard evidence indicating that both Petitioner and Tookes said the stabbing was an accident, and Payne's testimony, therefore, would have been cumulative. *Id*. at 4. The state court further noted that had Payne testified that Tookes said the stabbing was an accident, then her testimony would have been subject to impeachment by her prior written statement that Tookes told her that Petitioner stabbed her. *Id*. The state court concluded that Petitioner failed to demonstrate he was prejudiced by counsel's failure to call these witnesses. *Id*.

Petitioner's allegations are insufficient to support relief. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279, at *3 (N.D. Cal. March 7, 1996), *affirmed*, No. 96-15724, 1997 WL 31219 (9th Cir. January 23, 1997).

13

"Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id*. Petitioner has failed to present evidence of actual testimony or any affidavit from Payne. Petitioner has not made the requisite factual showing. Petitioner's self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Moreover, "[t]he decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. The witness may not testify as anticipated, or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perception of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused." *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted).

As discussed *supra*, evidence was introduced that the stabbing was an accident. Moreover, both Tookes' and Payne's testimony would have been subject to impeachment based on their prior statements. Petitioner, therefore, has not demonstrated that counsel was deficient for not calling these witnesses or that a reasonable probability exists that the outcome of the proceeding would have been different had counsel called these witnesses. Accordingly, claim five is denied pursuant to § 2254(d).

### D. *Claim Six*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the 911-audio taped statement of Tookes on the basis that it was a perjured contradictory

statement. In support of his claim, Petitioner maintains that the 911-audio taped statement contradicted the two letters written by Tookes.

Petitioner raised this claim in his Rule 3.850 motion. Applying *Strickland*, the state court denied relief. (App. J at 4.) The state court reasoned that "[t]elephone calls to 911 for emergency assistance are not sworn and obviously, such calls are not made within the context of official court proceedings." *Id.* The state court concluded, therefore, that counsel had no basis to object on the ground that Tookes committed perjury. *Id.*

Petitioner has not demonstrated that the state court's determination was either contrary to, or an unreasonable application of, federal law. Accordingly, this claim is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. No. 12) filed by Michael L. Brooks is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 12th day of March, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sc 3/12
Counsel of Record
Michael L. Brooks